Our third and final case this morning is 25-1347 Reilly v. United States Department of Labor. Mr. Small. Good morning, Your Honors, and may it please the Court. My name is Jacob Small, and I represent Petitioner Keith Michael Reilly. To begin, I'll offer a brief introduction and roadmap of my arguments today. Mr. Reilly is a federal criminal investigator who exposed misconduct within the Department of Labor's Office of Inspector General. The Board found by preponderant evidence that his disclosures were a contributing factor in the agency's decision to exclude him from employment. Despite that finding, the Board let the agency escape, and that was error. Now, this case consolidates two MSPB appeal decisions. The first is Board Docket 0093, and it involves a vacancy from which Mr. Reilly was excluded entirely. The second, Board Docket 0531, involves a vacancy for which he applied but was not selected. I will make three points this morning. First, on Board Docket 0093, the agency's decision fails at a threshold. Documents contradict its key testimony. Secondly, still on 0093, under the CAR factors, the agency cannot meet its clear and convincing burden. And third, I'll turn to the MSPB Docket 0531 and argue that Mr. Reilly exhausted his administrative remedies by giving OSC explicit written notification of whistleblower retaliation. Turning to my first point, that the agency's defense is contradicted by documentary evidence. The agency has relied on SAC Lisa Anderson's testimony that she used the same position description for a 2019 vacancy as for 2016 vacancies, and that's at JA 295. But the documents contradict her on that point. The 2016 vacancies said OIG wide, JA 1319 and 1320, and the 2019 vacancy says current employees only at JA 110. That word, that change to current excludes former employees like Mr. Reilly as the basis of his appeal. Now, the record evidence shows a contradiction that the agency hasn't explained. When she testified that the same language is used for the documents show that she didn't. Evidence that is contradicted by the agency's records cannot be clear and convincing under any standard. Can I ask you about those two announcements, vacancy announcements? Were they both similar in the sense that the agency was trying to fill a short-term vacancy, and therefore it would seem logical that they would want to try to do so internally as opposed to going out to recruit a candidate? If I understand, Your Honor, are you asking if the comparison announcements that we point to are similarly situated as the one at issue? Yes. I just don't know, Your Honor. What I do know is that when we turn to looking for comparators, the agency offered no comparators to show that they had done this before. So while I haven't looked to the record specifically to answer that question, and I just don't know it off the top of my head, I think that we would have relied upon, we would have expected that to have been part of the agency's discussion of the third car factor. Well, I guess what I'm getting at, and you can respond to this, is that on the face of it, it seems to make sense, and it doesn't seem to portend anything sinister that an agency might for a short-term vacancy like this one, where they had someone go out on, I think it was medical leave, want to simply quickly, expeditiously get somebody from in-house as opposed to going out and solicit external candidates. So what's illogical or sinister about that? Your Honor, and just correcting, I think that the individual in this case may have had a military posting that they had to attend. Okay. You're right. Your Honor, the argument is not internally consistent. If the asserted basis is that you want somebody who can rapidly get up and running and understands the agency, it would make sense to exclude people who'd never worked at the agency. It would not make sense to exclude people who had recent experience at the agency but had left. So we just think that if you're saying that this is, if the agency says, and they do, that this is the reason why they take this particular action, we have to interrogate whether that solves the problem that they say that it does, or whether it's reasonable to expect it. And if the primary change is to remove the access to former OIG, to former employees of the same agency, I think that just on its face, it's an internally inconsistent argument, Your Honor. Did I address your question, Judge? You did. All right. I'm going to turn now to the second point that I plan to address today, which was the CAR factors. So under CAR, as the Court's aware, the agency must satisfy three factors to meet its clear and convincing burden. We think it fails on all three. Factor one is the strength of the agency's evidence. And the agency's evidence rests, as I discussed, on Anderson's testimony that she used the same language as 2016. Under Miller v. DOJ, conclusory testimony alone is insufficient to meet the clear and convincing standard, and we think that based on the comparison of the documents, essentially the assertion by Anderson is reduced to a conclusory statement at that point. Similarly, under Smith v. GSA, the question isn't whether limiting the vacancy was justified, it's whether the agency would have done it absent Mr. Riley's whistleblowing. And evidence contradicted by the agency's own records cannot answer that question. Turning to the second CAR factor, which is motive, we think that the Board minimized this. Treating Mr. Riley's complaints is not especially memorable, but we think three things demonstrate otherwise. First, look at who made the decisions. The same officials who denied Mr. Riley's reinstatement in January 2018, Garcia-Williams and Anderson, were involved in restricting the January 2019 vacancy. That's JA-2612 and 2614. But we don't think that that's coincidence. We think that's a pattern. Second, Anderson, we think, got the date wrong in her affidavit. She claimed she spoke to Mr. Riley around March 2017. That's at JA-1536. Do you make any of these factual arguments in your opening brief? Your opening brief didn't seem to include any of these disputes with the fact-finding. All of this came up in your reply brief. Isn't that right? Your Honor, you asked me the question and I should know it, but at the moment I'm thinking that the argument we're making at the moment about the dates, I'd have to double-check my briefs, and I don't want to sort of get lost in my documents here. But taking you at your word that we excluded it from the initial brief, I think we offered it as rebuttal to the government's response. Yeah, you mentioned the CAR factors as to this particular case in your opening brief, but I noticed it because I was surprised that you didn't take issue with any of the actual findings. You didn't present these arguments about comparing a former opening announcement versus this one, or the dates and those sorts of things. And usually we expect your arguments to be in the opening brief or else be waived because then your opponent can't respond to them. Your Honor, to the extent that – and I saw that in the government's response that they made those arguments. I think that in our opening brief, we primarily take issue with the administrative judge's determination with respect to the CAR factors that the government had met the CAR factors and that they had appropriately put forward a sufficient basis to overcome the contributing factor. When it comes to the government's allegation or argument in its response brief that we had failed to raise specific issues, we tried to rebut those in our reply brief. So I hope that I addressed your question, Judge. Sure. Thanks. All right. I was, I think, talking about the second CAR factor when you asked your question, Judge, and that leads me to discuss the third. The agency's response to the initial protected activity by Mr. Riley in this case, this is back in January 2017, that occurred the day after Mr. Riley's disclosures when the Assistant Inspector General Garcia stripped him of his firearm and ordered a fitness exam. We think that it's still appropriate now for the court to notice that 24-hour time period as being especially close for reprisal purposes. And even though... Let me ask you about that, Mr. Small, because the whole basis for that was your client's voluntary examination by his doctor and a conclusion that he was unfit for duty. I mean, what else were they supposed to do? That doesn't sound like retaliation. It sounds like an entirely appropriate response to a finding that he could no longer perform his job. Well, my client's doctor did state for a time that he was not fit for duty, but the decision to force Mr. Riley into, or rather, the process by which he was moved into a negotiated retirement, disability retirement, was a multi-step process. And it culminates when his doctor clears him for duty and he seeks reinstatement. And at that point in time, there's a... And I don't think that this is especially apparent from the record in the briefs, but it is in the JA. Mr. Riley's attorney asks for reinstatement and the agency seems to shuffle him out the door really quickly to accomplish the OPM disability retirement. What we think, Your Honor, is that Mr. Riley's initial protected activity, where he's making complaints about his SAC and where he's trying to get relief, that that was the motus for moving him out, for pushing him into retirement. And when he sought to have his retirement, when he sought for reinstatement, and he came back and his attorney said that he thought that the process by which he had been pushed into a disability retirement was discriminatory, the agency summarily denied that. Now, none of those facts, none of that are before the court as a dispute today, but that's important context because we think it does help the court understand why later the agency is taking steps to keep Mr. Riley off of, to keep Mr. Riley out of the agency when he tries to come back. I'll turn my, with the remaining time I have here before rebuttal, I'll turn to the third point I plan to make, and that was that with respect to the AJ's determination that Mr. Riley had failed to exhaust, now talking about 0531, the other MSPB appeal, the board dismissed this claim after an initial finding at the jurisdictional level that he had exhausted his administrative remedies, the AJ revisited it. And noticing I've got very limited time here, I'll try to keep my discussion of this brief. The court should look to Mr. Riley's emailed communications to OSC, to investigator Angela Rush. There he included email attachments, including I think that what's in our brief here, I think it's JA1279, where he sends an email describing his concerns. We think that for those reasons, the AJ was wrong in revisiting and then overturning the initial jurisdictional finding that there was exhaustion. I see that my time is expiring, so unless the panel has any additional questions, I'll reserve for rebuttal. All right, thank you very much. Mr., I'm sorry, Ms. Gropp. Good morning. May it please the court, my name is Molly Gropp. I'm here from the Department of Justice on behalf of Respondent Department of Labor. The Department of Labor respectfully requests that the court affirm the MSPD's denial of corrective action in two IHRA appeals brought by Mr. Riley. On appeal, Mr. Riley is largely asking this court to relitigate facts that were found below by the board. As this court is aware, that's not the court's province, as set forth in this court's McKayla case and Pearson cases. Rather, the court reviews the record for substantial evidence, and we would submit that the board's two decisions are amply supported by substantial evidence in this case. I'd like to start, if I may, with Vacancy 13 and then turn to Vacancy 239. Just for clarity of the record, Vacancy 13, which was also known as the 93 appeal, was an internal job posting. As a former employee, Mr. Riley was not in a position to apply for an internal posting. The board heard Mr. Riley's arguments below, and ultimately found that the agency proved by clear and convincing evidence that its decision to list the vacancy as internal only was not in retaliation for any protective disclosures by Mr. Riley. Mr. Riley has argued in his briefs that the board's findings below, either that it had jurisdiction over the protective disclosures for Vacancy 13, or that Mr. Riley had established a prima facie case, are somehow dispositive of the CAR factor analysis. They are not. The law is clear that under CAR, which this court has adopted and applied in McKayla, the burden then shifts to the agency who has an opportunity to rebut that finding, as it did in this case. The board recognized that there was strong evidence justifying the agency's decision to list the vacancy internally. There were contemporaneous documents of a unique and urgent business need. As already discussed, the individual who held the position normally had been recalled to active duty and would be gone for 12 months, so it was a temporary position only. There was no full-time equivalent position available. Thus, it was limited as an internal posting for somebody to simply be reassigned for the year. The board considered that it was logical to conclude by the agency that a current employee would be better equipped to step right in and get the ball rolling. Also notably, Zach Anderson, who was the selecting official, was not aware that Mr. Riley was no longer employed at that time. Now, Mr. Riley makes much of differences in wording in vacancy announcements prior to his January 2017 disclosures versus after, but we would submit that the differences in wording are distinctions without a difference. So prior to the January 2017 protected disclosures, we have vacancy announcements that are limited to OIG-wide and OIG-nationwide, whereas after the disclosures, vacancy 13, it's listed as current DOL OIG employees. That is the same thing. None of those vacancies cited by Mr. Riley were open to the public. At that time, Mr. Riley was a member of the public. The 2016 vacancies that are limited to applicants OIG-wide and OIG-nationwide is another way of referring to current employees. So we would submit that the differences in the wordings are distinctions without a difference, and Zach Anderson was not making any false or erroneous statements in her explanations to the board. I understand Mr. Small to suggest that excluding, I suppose he would describe his client as a recent retiree or others similarly situated doesn't seem to make operational sense, but that's not the test, I guess. It's whether or not there was anything untoward in limiting the announcement in the way that the agency did. Perhaps it might have been better, a better group of candidates or wider array of candidates if recent retirees had been in the mix, but I don't think that's what the law requires. That's correct, Your Honor. And also just as a factual matter, there is a financial difference for an agency in borrowing a position to be filled for one year on a temporary basis. That's no additional salary. It's no additional benefits. You're just borrowing an individual from elsewhere in the agency, like a detail, as opposed to creating a new position, which is what Mr. Riley argues he was entitled to. But again, that's not the standard. The agency possibly, if it had a full-time position, could have listed a full-time position, but it didn't have one. And the board found that the SAC Anderson's testimony provided a fulsome explanation for why that vacancy 13 was limited to internal candidates. It was not a new position. It was going to be a temporary position for only one year. And even to fill that on a detailed basis, they had to borrow a full-time position from another part of the Department of Labor. With respect to CAR Factor 2 for vacancy 13, the board found that there was minimal, if any, motive, and thus considered the factor neutral in its CAR balancing analysis. The board acknowledged that SAC Anderson had knowledge of the January 2017 protected disclosures, although the board credited her explanation that she did not view them significant or remarkable enough to rise to abuse or mismanagement, that it was an interpersonal issue between Mr. Riley and his first-line supervisor. So in any event, to the extent the board recognized any retaliation, it was not based on affirmative evidence of SAC Anderson holding any retaliatory motive or bias. It was based on circumstantial evidence, which is allowed by the statute in this context, considering the knowledge and timing test. Basically, the selecting official, selecting official Anderson here, had knowledge of the protected disclosures, and the decision to limit the vacancy announcement to internal only was made within two years of the protected disclosures. Therefore, a reasonable person could conclude there was retaliation, but that doesn't mean that there actually was as an affirmative factual matter, which is why, with knowledge and timing, it was sufficient in terms of Mr. Riley's prima facie case of contributing factor, but when it got to the CAR Factor II analysis, the board found it was not terribly strong evidence of retaliatory motive because there was nothing in the record that suggested SAC Anderson actually harbored any retaliatory animus or bias. Now, before the board, the board had also considered Mr. Riley's cat's paw argument, what's known as a cat's paw, where one individual might harbor retaliatory animus and controls others. The board disregarded that argument and found it not supported by the record in this case. Mr. Riley does not raise the cat's paw argument in his opening brief before this court, though he mentions it without much development in his reply. We would submit under this court's precedent in Grayson that any challenge to the cat's paw analysis is waived. Finally, with respect to CAR Factor III, the court found the factor was neutral because there was no evidence of comparators. Mr. Riley submits that the absence of evidence should have been viewed as a basis for an adverse inference against the agency or at least meant that the factor would then weigh in his favor, but the law is not on his side for this argument. The law is clear based on the progeny of cases, Whitmore, Seiler, Smith, Doyle, that the absence of evidence under CAR Factor III cannot favor the government, and the board recognized that in this case in holding that the factor was neutral. But the absence of evidence does not mean that CAR Factor III weighs against the agency. That's the Rickle case. CAR in and of itself does not require the agency to produce evidence under each and every one of the factors or to prevail under each and every one of the factors in order to establish clear and convincing evidence. It's a balancing test, and in this instance, the board we submit had substantial evidence to side with the government that the agency had established by clear and convincing evidence that there was no pretext in listing vacancy 13 as an internal posting only. If there are no questions on that vacancy announcement, I'll move on to 531. The second vacancy at issue is actually Vacancy 239. That's variously referred to as Appeal 531. In that instance, it was a public posting for OIG and non-OIG or non-labor employees. Therefore, Mr. Riley could apply, but he was not selected. On appeal to the board, the board found that he had failed to exhaust his administrative remedies with respect to Vacancy 239, and in the alternative, even if he had exhausted, he had failed to establish a prima facie case that retaliation had been a contributing factor in his non-selection for that vacancy. We would submit again that the board's analysis is amply supported by substantial evidence and consistent with the record. The OSC complaint with respect to Vacancy 239 appears in the record at JA 877 to 878. It is very clear on those pages that the only basis for corrective action Mr. Riley sought before the OSC with respect to Vacancy 239 was unauthorized preference. He says his scores were artificially deflated and he wasn't credited for his work protection detail such that someone else got the job, essentially. I think Mr. Small, Ms. Croft, Mr. Small, if not expressly, at least implicitly concedes that the complaint might not have alerted the agency, but then he points to an email that he says does. What's deficient with respect to that? Yes, Your Honor. So the specific OSC complaint for Vacancy 239 is at 877 to 878. That is part of a larger packet that Mr. Riley submitted to the Office of Special Counsel that runs from 856 to 889, I believe. 886, 859 to 886. In that packet, he includes other complaints about other vacancies, right? That's the blacklisting claims, other vacancies. Each complaint is its own standalone piece. They're just assembled together in a packet. And if you run through that packet, his requests for corrective action with respect to other vacancies talk about retaliation for whistleblowing. But the OSC complaint for Vacancy 239 specifically does not. And so after OSC received this packet and ultimately sent emails and issued a letter closing the investigation, it refers to closing out an investigation that included retaliation for whistleblowing, but that was a reference to the larger packet, not the OSC complaint at issue here, which is 239. Well, I suppose we don't even need to deal with that if it's what you say that the agency considered the claim nonetheless on the merits and rejected it, right? The OSC closed the... What exactly the OSC did is not clear, but what they did was close the investigation and give Mr. Riley permission to file an appeal with the board. There's no investigatory record of OSC. Well, I was referring to your alternative argument about the contributing factor. Yes, Your Honor. So even if this court were to find, disagree with the board that there was exhaustion, the board found in the alternative that Mr. Riley had not established a prima facie case for retaliation for whistleblowing with respect to Vacancy 239. And the reasons for that are several fold. So whereas for Vacancy 13, Mr. Riley could rely on circumstantial evidence, the knowledge and timing test, that was not an option for him with respect to Vacancy 239 because he could not establish either knowledge or timing This Vacancy Announcement 239 was issued more than two years and seven months after the purported protected disclosures in January 2017. So under at least the court's Federal Circuit's analysis, which we would submit as persuasive, that's too attenuated of a time to make an inference of retaliation like one could for Vacancy 13. Also the selecting official is different for Vacancy 239. Zach Anderson for the other vacancy had knowledge of the January 2017 protected disclosures. The selecting official Downey in Vacancy 239 did not and testified as such and there's no evidence to the contrary on that. Now Mr. Riley makes much of the fact that Downey, the selecting official for 239, was aware of other EEOC actions that had been filed by Mr. Riley, but he is not alleging retaliation for EEOC actions before the board or before this court. He has alleged retaliation for protected disclosures to the OSC in January 2017 and the record is clear that selecting official Downey did not have knowledge of that when the vacancy announcement was posted or when someone else was selected in lieu of Mr. Riley. So without the knowledge and timing test available, Mr. Riley has to rely on actual evidence of retaliatory bias or animus by the selecting official and as I just explained, Mr. Downey did not have any knowledge of the OSC complaints from January 2017. But Mrs. Small says that his ability to rebut any of that evidence was hampered by the fact that this panel's selection members destroyed their notes and that that should have resulted in adverse inference against the agency. I'm trying to remember what your response was to that. I think you said that this was just a standard practice. Do I have that right? Yes, and I can elaborate on that a bit. So the board did consider the spoliation argument. Mr. Riley made it before the board below and the board rejected it and we would submit that the board did not abuse its discretion in doing so. The record reflected that yes, the notes surrounding the selection of a candidate for vacancy 239 were destroyed by the panel. But the board found that an adverse inference was not warranted because that destruction of notes was not unique to vacancy 239. It was not evidence of some kind of retaliation or attempt to hide views with respect to Mr. Riley. Selecting panels like that for 239 had routinely destroyed notes after a selection was made and they had done so based on advice from their human resources department. Now, albeit that that advice was erroneous and inconsistent with OPM guidance, the board found that based on that explanation there was no evidence of any kind of nefarious activity or nefarious motive in the destruction of the notes. But further in the alternative, to the extent it was inappropriate to have destroyed the notes, the board found that they considered it to be a harmless error because it was not anticipating that those notes would have held any kind of dispositive evidence of retaliation because the individual selected to fill vacancy 239 had both more experience in protective services and more training than Mr. Riley. And so there was evidence in the record that supported that individual selection over Mr. Riley on the merits. Do you have anything else, Ms. Krupp? I do not, unless the panel has any questions. All right. Thank you very much. Thank you. Mr. Small? Thank you, Your Honors. For rebuttal, I'll try to be brief. There's a few points that come to mind. The first is my friend on the other side's reference to the RICL matter. It's true that RICL does permit courts to find or is an example of courts saying that the CAR Factor 3 does not always need to be offered. But on the flip side of that is that CAR Factors 1 and 2 would need to be especially strong. In RICL, the deciding official, Captain Weiss, he had a weak motive, right? And here, the official who made the decision, S.A. Anderson, is the person who received Mr. Riley's whistleblowing complaints in 2018. If we just turn to the Murano against Department of Justice case that's at 2 Feb. 3, 1137, we notice that it's not merely the content of a protected disclosure that can be protected. It's the fact of a disclosure, too. So here we know that S.A.C. Anderson knows about the fact of Mr. Riley's complaints. So we don't think that RICL is carte blanche for courts to say that CAR Factor 3 is no longer important. It is important. And when the other CAR Factors don't weigh as heavily, you're not going to have the same result as in RICL. I also want to just take this opportunity to point out that the way that the MSPB disposes of individual appeals at the jurisdictional level in a piecemeal fashion really has deprived Mr. Riley of the opportunity to make his core argument, which is that ever since he left the Department of Labor, he's not been able to find a way in. Through many, many postings, he's looked for an opportunity as a competent and experienced federal investigator who's been awarded for his efforts in federal criminal work, federal criminal law enforcement work. That by itself speaks volumes, that he's not even able really to get an interview. And that's why we've brought at various times a continuum of discrimination and blacklisting claim. In our opening brief, we do argue that the jurisdictional decision by the AJA to dismiss the blacklisting claim is an error. And so what I would just note is that while my friend on the other side is talking about us not having the ability to prove that in one of the remaining vacancy announcements that's left open, that that individual decider knew about the protected activity in 2018, I will note that Daniel Downey did. I don't think that Daniel Downey's affidavit regarding the EEO issues are clear that he is only thinking of EEO complaints. I think he says that they've had to comply with investigatory steps every time Mr. Riley complained. So I don't think it's 100% clear that we can say that he's only thinking about EEO. I think that's a bit open to interpretation. But our primary argument when Mr. Riley brought these claims was that he's been barred from employment. And so the court should look at the entirety of Mr. Riley's allegations and the blacklisting allegations, and whether that is to say that the blacklisting jurisdictional determination is an error and that it needs to go back so that all of those claims can be sent for discovery in a hearing, or whether it's to say that that pattern of conduct is relevant to the question for 0531, for the 0531 appeal of whether there is contributing factor. We think that the blacklisting and the pattern of sort of barring him from employment are relevant. So with that, I'll answer any further questions the panel has. Otherwise, I thank you for your time. All right. Thank you both, counsel, for your arguments this still morning. Thank you for being with us remotely. We appreciate your presence and help with this final case on our docket today. And with that, we ask the clerk to adjourn court until tomorrow morning at 930. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Albert Diaz, Julius N. Richardson, Allison J. Rushing